Appellant Lavera Burmeister, the natural mother of Joshua Burmeister, appeals an order granting permanent custody of Joshua to the Summit County Children Services Board ("CSB"). This Court affirms.
 I.
Lavera became pregnant with Joshua in early 1993. At the time, Lavera was working as a prostitute and was regularly abusing drugs and alcohol. Lavera stopped using drugs and alcohol in the spring of 1993, upon learning that she was pregnant with Joshua. Joshua was born healthy on October 22, 1993.
In the later stages of her pregnancy and during the early months of Joshua's life, Lavera resided with a friend named Sherry Bailey. Bailey assisted Lavera in caring for Joshua and attempted to instruct Lavera on how to care for a child.
When Joshua was approximately six months old, Lavera and Joshua moved out of the Bailey residence and into an apartment of their own. While living in this apartment, Lavera became involved in a bad relationship and her life began to deteriorate. Lavera again began to abuse drugs and alcohol.
It was during this period of time that Lavera's mother, Joshua's grandmother, Keenya Curry became involved. Curry has a long history of involvement with the CSB. Curry was so abusive to her own children, including Lavera, that they were removed from Curry's custody by the CSB. Joshua is the fourth generation from the Curry family to be involved with the CSB.
After Lavera moved out of the Bailey household and began to abuse drugs, Curry threatened to inform the CSB about Lavera's failure to care for Joshua. As a result, despite the abuse and neglect that Lavera had suffered at the hands of Curry, Lavera eventually granted Curry temporary custody of Joshua. Joshua was approximately fifteen months old at the time. While in Curry's care, Joshua was locked in his bedroom for long periods of time, was denied bathroom facilities so that he was forced to urinate and defecate on his bedroom floor, and was verbally abused by Curry.
Over a year later, after receiving reports concerning the abuse and neglect in the Curry household, the CSB removed Joshua from the custody of Curry. On April 7, 1997, Joshua was adjudicated neglected and dependent and was committed to the temporary custody of the CSB.
After Joshua was removed from Curry's home by the CSB, Lavera again became pregnant. During this pregnancy, Lavera again corrected her lifestyle. Lavera moved into the household of Edward Sepelak, the father of this child, during the pregnancy. On November 3, 1997, Lavera gave birth to this second child. Lavera and Sepelak subsequently became engaged to be married.
At the time of the permanent custody hearing regarding Joshua, Lavera and her second child continued to reside with the Sepelak family in a stable environment and Lavera was still planning to marry Sepelak. Nevertheless, despite concluding that Lavera had substantially complied with the case plan, the trial court awarded the CSB permanent custody of Joshua. Lavera timely appealed.
II.
Lavera's first assignment of error states:
 I. THE RULING OF THE TRIAL COURT GRANTING PERMANENT CUSTODY TO THE SUMMIT COUNTY CHILDREN'S SERVICE BOARD WAS ERROR [sic] AS THE STATE DID NOT MEET THE REQUIREMENTS FOR GRANTING PERMANENT CUSTODY AS SET FORTH BY OHIO REVISED CODE 2151.414[.]
This Court interprets this assignment of error as challenging the weight of the evidence supporting the trial court's award of permanent custody. When asked to review the weight of the evidence in relation to a civil proceeding, an appellate court will only reverse a verdict when it "`is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice.'" Jacobs v. Benedict (1973), 39 Ohio App.2d 141,144, quoting 3 Ohio Jurisprudence 2d 817, Appellate Review, Section 819.
In cases not involving an abandoned or orphaned child, a trial court is required to find, by clear and convincing evidence, that (1) it is in the best interest of the child to grant permanent custody and (2) that the child cannot or should not be placed with either of the child's parents within a reasonable time. R.C. 2151.414(B).
 The standard of clear and convincing evidence requires more than a mere preponderance of the evidence, but it does not rise to the level of certainty that is required of the beyond a reasonable doubt standard in criminal cases. Rather, it must produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.
(Citations omitted.) In re Rankin (Dec. 23, 1998), Summit App. No. 19118, unreported.
 A.
Regarding the first prong of the permanent custody analysis, whether permanent custody is in the child's best interest, a trial court,
 shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
R.C. 2151.414(D).
The evidence in the instant case showed that Joshua did not have a strong bond with his mother. Both Joshua and Lavera appeared hesitant during their visitation sessions. On the other hand, Joshua had a good relationship with his foster parents, even referring to his foster mother as "mom." Joshua was afraid of his grandmother, Curry, referring to her as the "mean grandmother," and associated Lavera with the "mean grandmother."
Additionally, Joshua stated that he did not want to live with Lavera. The guardian ad litem similarly had reservations about returning Joshua to Lavera, ultimately recommending that the CSB be granted permanent custody.
In regard to Joshua's custodial history, Joshua has only resided with Lavera on a regular basis during the first six months of his life, at which point Lavera entrusted him to the care and custody of Curry, a woman who had severely abused and neglected Lavera when Lavera was a child. Since then, Lavera has only interacted with Joshua during brief visits. At the time of the hearing, Joshua was residing in his third foster home. This third foster placement has proven to be stable.
During his time with Curry, Joshua regressed in toilet training, self-feeding, and speech. Since arriving in his third foster home, Joshua has made great developmental strides. Nevertheless, Joshua continues to be dramatically behind his peers in all areas of development. As a result of Joshua's severe developmental delays and accompanying behavioral problems, the trial court concluded that Joshua's need for permanency is exacerbated. In that regard, Joshua's current foster family has expressed a desire to adopt Joshua.
Based on all of this evidence, this Court cannot say that the trial court's finding that permanent custody is in Joshua's best interest is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice.
 B.
Regarding the second prong of the permanent custody analysis, whether a child can or should be placed with his parents within a reasonable time, the trial court must find, by clear and convincing evidence, that one or more of twelve enumerated factors exists. R.C. 2151.414(E). In the instant case, the trial court specifically noted two of the factors listed under R.C.2151.414(E):
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * *
(12) Any other factor the court considers relevant.
Lavera's second assignment of error specifically addresses the second prong of the permanent custody analysis:
 II. THE TERMINATION OF PARENTAL RIGHTS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHERE THE PARENTS HAVE SUBSTANTIALLY COMPLIED WITH THE COMPREHENSIVE REUNIFICATION PLAN.
Lavera argues under this assignment of error that the trial court's finding that Joshua could not be placed with her within a reasonable time was against the weight of the evidence because she had substantially complied with the terms of the case plan. Indeed, the trial court concluded:
 The court finds upon all of the evidence that in the tardy, albeit substantial, compliance with the terms of the case plan, the mother has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.
(Emphasis added.) Lavera argues that the finding of substantial compliance precludes the trial court from finding that Joshua cannot be placed with her.
Although there would appear to be some inconsistency in concluding that Lavera had substantially complied with the terms of the case plan but had not substantially remedied the conditions causing the child to be placed outside the home, Lavera is mistaken in concluding that substantial compliance with the case plan precludes the trial court from granting permanent custody to the CSB.
Prior to August 8, 1996, R.C. 2151.414(E) listed only eight factors for the trial court to consider. Notably missing at the time was language allowing the trial court to rely on any factor that it deemed relevant.
On March 4, 1996, the Ohio Supreme Court narrowly interpreted this statute in In re William S. (1996), 75 Ohio St.3d 95. The Ohio Supreme Court concluded that a trial court must specifically find one of the eight enumerated factors to exist in order to permanently terminate parental rights. The Ohio Supreme Court explained:
 The statute does not include discretionary language or language that would allow the trial court discretion to consider other factors that would justify terminating parental rights. Appellant asserts that by directing the court to "consider all relevant evidence," the General Assembly intended that the court have the discretion to consider factors other than the eight specifically enumerated. However, we interpret this cited phrase as simply a direction to the trial court delineating the evidence that it may consider when determining the existence of any one or more of the eight factors. The phrase is not meant to give the trial court unbridled discretion to come up with its own factors that would justify terminating parental rights. If that had been the intention of the General Assembly, it would have concluded R.C. 2151.414(E) by stating, "and any other circumstance."
Id. at 99.
The General Assembly heeded the Ohio Supreme Court's advice and amended R.C. 2151.414(E) to include some additional factors, specifically R.C. 2151.414(E)(12): "Any other factor the court considers relevant." The obvious import of this amendment is to clearly express the General Assembly's intent to give the trial court the very same discretion that was rejected by the Ohio Supreme Court in William S. See In re Peoples (Mar. 25, 1999), Cuyahoga App. Nos. 73460 73461, unreported; In re Brock (Oct. 5, 1998), Warren App. No. CA98-03-027, unreported.
As a result of the amendment to R.C. 2151.414(E), substantial compliance with the case plan does not preclude the trial court from granting permanent custody. Instead, assuming arguendo that Lavera had substantially remedied the conditions causing Joshua to be placed outside the home, the trial court had the discretion to consider "any other factor" that it considered relevant to the issue of whether Joshua could be placed with Lavera.[1]
In that regard, the trial court noted the tardy manner in which Lavera had complied with the case plan and concluded: "There is an urgency about providing this unique child with the care, protection, support and direction it will need to grow and develop as a child. Clearly that urgency cannot be met by mother at this juncture in her young life." The trial court had previously concluded that Lavera "does not possess the qualities of maturity, stability, predictability, and skills necessary to assure Joshua of a normal development." This Court sees nothing improper about examining a parent's history of immaturity, instability, and unpredictability. See In re Swisher (Apr. 2, 1997), Summit App. No. 17879, unreported.
After reviewing the evidence, this Court cannot conclude that the trial court's findings of immaturity, instability, and unpredictability, and the finding that Lavera lacks the necessary parenting skills are so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice. Lavera's second assignment of error is not well taken.
 C.
In conclusion, because the statutory requirements were satisfied, Lavera's first assignment of error is also not well taken.
Judgment affirmed.
 KK The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 ___________________________ DONNA J. CARR
FOR THE COURT
BAIRD, P. J.
SLABY, J.
CONCUR
[1] Our conclusion herein is not undermined by In re Shuman
(May 19, 1999), Lorain App. No. 98CA007082, unreported, fn. 3. Footnote three of In re Shuman was merely intended to express this Court's belief that a trial court's discretion in this area is not unlimited. Although a trial court does have considerable discretion to consider unlisted factors, that discretion is properly limited by the requirement of relevancy.